## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

COHEN MILSTEIN SELLERS & TOLL
PLLC
1100 New York Ave. NW, Suite 500
Washington, DC 20005,

        Plaintiff,

    v.                            Civil Action No. 1:18-cv-229

UNITED STATES SECURITIES AND
EXCHANGE COMMISSION
100 F St. NE
Washington, DC 20549,

        Defendant.

## COMPLAINT FOR INJUNCTIVE RELIEF

1.      This is an action under the Freedom of Information Act ("FOIA"), 5 USC § 552.

Plaintiff Cohen Milstein Sellers & Toll PLLC ("Cohen Milstein") seeks injunctive and other

appropriate relief to compel Defendant United States Securities and Exchange Commission

("SEC") to disclose records produced to the SEC by Miller Energy Resources, Inc. ("Miller

Energy"), KPMG, LLP ("KPMG"), and by individuals or entities associated with Miller Energy

and KPMG. The SEC has improperly withheld these records from Plaintiff.

## JURISDICTION AND VENUE

2.      This Court has both subject matter jurisdiction over this action and personal

jurisdiction over the parties pursuant to 5 U.S.C. § 552 (a)(4)(B). This court also has jurisdiction

over this action pursuant to 28 U.S.C. § 1331. Venue lies in this district under 5 U.S.C. § 552

(a)(4)(B).

**PARTIES**

3.     Plaintiff Cohen Milstein is a national law firm consisting of over 90 attorneys, with offices in, among other cities, Washington, DC, New York, NY, Philadelphia, PA, and Chicago, IL. Its principal place of business is Washington, DC. Plaintiff requested the withheld records from the SEC. Plaintiff is currently serving as co-lead counsel in a proposed class action against KPMG, in *Cosby et al. v. KPMG, LLP*, No. 3:16-cv-00121-TAV-CCS (E.D. Tenn.), arising out of the same subject matter as Plaintiff's FOIA request.

4.     Defendant SEC is a Department of the Executive Branch of the United States Government. The SEC is an agency within the meaning of 5 U.S.C. § 552(f).

**FACTS**

5.     In late 2009, Miller Energy acquired oil and gas assets in Alaska (the "Alaska Assets") for approximately $2.25 million cash and the assumption of $2 million in liabilities. Shortly thereafter, Miller Energy reported the fair market value of those assets as being an astonishing $480 million or more. That valuation—which later events would show was fraudulent—propelled Miller Energy from a small penny-stock company into one traded on the New York Stock Exchange ("NYSE").

6.     In February 2011, Miller Energy retained KPMG as its independent auditor. As investors would later allege, KPMG quickly became aware of facts showing that the valuation of the Alaska Assets was fraudulent, but intentionally or recklessly ignored those facts, and instead repeatedly issued audit reports certifying the accuracy of Miller Energy's financial statements, in violation of Generally Accepted Accounting Standards ("GAAS") and the federal securities laws.

7.     The SEC began inquiring into Miller Energy's valuation of the Alaska Assets no later than 2011, when it sent a series of publicly available letters asking the company to explain

various aspects of that valuation, among other things. It then commenced a formal investigation, which culminated in charges being brought against Miller Energy, KPMG, and numerous affiliated individuals and entities. That investigation confirmed, among other things, that the Alaska Assets had been fraudulently overvalued by Miller Energy from the outset, and that KPMG knew of facts indicating that overvaluation, but turned a blind eye towards those facts.

8.       On April 29, 2015, Miller Energy announced that it had received a "Wells Notice" from the SEC indicating that SEC staff had made a preliminary determination to recommend civil action against Miller Energy in connection with the valuation of the Alaska Assets. On August 6, 2015, the SEC formally commenced public administrative and cease-and-desist proceedings against Miller Energy, Paul W. Boyd ("Boyd"), its former chief financial officer, David M. Hall ("Hall"), the CEO of its Alaska business, and Carlton W. Vogt, III ("Vogt"), the lead partner of its former auditing firm, Sherb & Co., LLP. *See* SEC August 6, 2015 Order Instituting Public Administrative and Cease-and-Desist Proceedings pursuant to Section 8A of the Securities Act of 1933, Sections 4C and 21C of the Securities Exchange Act of 1934, and Rule 102(e) of the Commission's Rules of Practice, File No. 3-16729 ("August 6, 2015 Order") (attached hereto as Exhibit A).

9.       As the August 6, 2015 Order makes clear, the SEC has collected numerous documents from Miller Energy and its employees. For example, the Order cites a document in which a petroleum engineering firm declined to perform work requested by Miller Energy in connection with the Alaska Assets, and quoted the firm as saying it would not put its "name on a report that implies value exists where it likely does not." August 6, 2015 Order, ¶ 41. As another example, the Order quotes Vogt as telling Boyd that the lack of controls over key assumptions used for the valuation of the Alaska Assets was a "concerning void." *Id.*, ¶ 42.

10.     On January 16, 2016, the SEC accepted a settlement offer from, made findings against, and entered sanctions against Miller Energy. *See* SEC January 12, 2016 Order Making Findings and Imposing a Cease-and-Desist Order and Penalties pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934 as to Miller Energy Resources, Inc., File No. 3-16729 ("January 12, 2016 Order") (attached hereto as Exhibit B). On June 7, 2016, the SEC did the same with respect to Vogt, Hall, and Boyd. *See* SEC June 7, 2016 Order Making Findings and Imposing a Cease-and-Desist Order and Penalties pursuant to Sections 4C and 21C of the Securities Exchange Act of 1934 and Rule 102(e) of the Commission's Rules of Practice as to Carlton W. Vogt, III, CPA, File No. 3-16729 ("Vogt Order") (attached hereto as Exhibit C); SEC June 7, 2016 Order Making Findings and Imposing a Cease-and-Desist Order and Penalties pursuant to Section 8A of the Securities Act of 1933 and Section 21C of the Securities Exchange Act of 1934 as to David M. Hall, File No. 3-16729 ("Hall Order") (attached hereto as Exhibit D); and SEC June 7, 2016 Order Making Findings and Imposing a Cease-and-Desist Order and Penalties pursuant to Section 8A of the Securities Act of 1933, Sections 4C and 21C of the Securities Exchange Act of 1934 and Rule 102(e) of the Commission's Rules of Practice as to Paul W. Boyd, CPA, File No. 3-16729 ("Boyd Order") (attached hereto as Exhibit E). All of these Orders cite the same documents and evidence as set forth in the August 6, 2015 Order.

11.     The SEC also investigated KPMG over its role in Miller Energy's fraud. On August 15, 2017, the SEC formally commenced public administrative and cease-and-desist proceedings against KPMG and John Riordan ("Riordan"), KPMG's lead partner on the Miller Energy engagement, and accepted a settlement offer made by KPMG and Riordan in anticipation of those proceedings. *See* SEC August 15, 2017 Order Instituting Public Administrative and

Cease-and-Desist Proceedings pursuant to Sections 4C and 21C of the Securities Exchange Act of 1934 and Rule 102(e) of the Commission's Rules of Practice, Making Findings, and Imposing Remedial Sanctions and a Cease-and-Desist Order, File No. 3-18110 ("KPMG Order") (attached hereto as Exhibit F). Pursuant to the KPMG Order, KPMG and Riordan agreed to pay over $6.2 million in disgorgement, civil penalties, and pre-judgment interest. Among other sanctions, the KPMG Order censured KPMG, and denied Riordan the privilege of appearing or practicing before the SEC as an accountant.

12.     As with the prior SEC orders, the KPMG Order makes clear that the SEC has collected numerous documents from KPMG and its employees. For example, the KPMG Order quotes a March 10, 2011 document in which KPMG personnel indicated that certain values for the Alaska Assets "are so high, it does not make sense." KPMG Order, ¶ 43. As another example, the KPMG Order quotes KPMG workpapers as stating that Boyd "does not appear to have adequate knowledge and experience in the oil and gas industry to facilitate the completeness and accuracy of industry specific accounting." *Id.*, ¶ 59.

### PLAINTIFF'S FOIA REQUESTS AND DEFENDANT'S RESPONSES

13.     On June 5, 2017, Plaintiff filed a FOIA request with the SEC seeking non-privileged documents relating to the Alaska Assets produced to the SEC by Miller Energy, Boyd, Hall, Vogt, KPMG, and Riordan, as well as by Cook Inlet Energy, LLC ("CIE"), Miller Energy's Alaskan subsidiary, Scott M. Boruff ("Boruff"), Miller Energy's former CEO, David J. Voyticky ("Voyticky"), Miller Energy's former President and acting CFO, and Sam Bennett ("Bennett"), another KPMG partner working on the Miller Energy engagement. *See* Plaintiff's FOIA Letter dated June 5, 2017 (attached hereto as Exhibit G). Plaintiff's letter included requests for specific documents and emails described in the August 6, 2015 Order and the Vogt, Boyd, and Hall

Orders. However, because the KPMG Order had not yet been issued, it did not include requests for specific documents and emails described in that order.

14.     By letters dated June 5 and June 7, 2017, the SEC acknowledged receipt of Plaintiff's request, divided the request into ten separate requests, and assigned them Request Numbers as follows:

- Miller Energy (Request 17-02840-FOIA);

- Cook Inlet Energy, LLC ("CIE") (Request 17-02841-FOIA);

- Scott M. Boruff ("Boruff") (Request 17-02842-FOIA);

- Paul W. Boyd ("Boyd") (Request 17-02843-FOIA);

- Carlton W. Vogt, III ("Vogt") (Request 17-02844-FOIA);

- David J. Voyticky ("Voyticky") (Request 17-02845);

- David M. Hall ("Hall") (Request 17-02846-FOIA);

- KPMG (Request 17-02847-FOIA);

- John Riordan ("Riordan") (Request 17-02848-FOIA); and

- Sam Bennett ("Bennett") (Request 17-02849-FOIA).

15.     By letters dated June 27, June 28, July 3, and July 17, 2017, the FOIA Branch Chief for the SEC, Ray J. McInerney, and FOIA Lead Research Specialist, Sonja Osborne, advised Plaintiff that all of Plaintiff's FOIA requests either had no responsive records or were being denied based on various FOIA exemptions.

16.     Specifically, in a June 28, 2017 letter, the SEC wrote to Plaintiff that the SEC could not locate or identify any documents produced to the SEC by CIE.

17.     As for the remaining nine requests, five were denied based on the law enforcement exemption of 5 U.S.C. § 552(b)(7)(A) ("Exemption 7(A)"). In particular, in a June

6

28, 2017 letter, the SEC relied on Exemption 7(A) to withhold records produced by Miller

Energy and KPMG. *See* SEC FOIA Letter dated June 28, 2017 (attached hereto as Exhibit H).

Then, in a July 17, 2017 letter, the SEC relied on the same grounds to withhold records produced

by Boyd, Vogt, and Hall. *See* SEC FOIA Letter dated July 17, 2017 (attached hereto as Exhibit

I).

      18.    The remaining four requests were denied based on the privacy exemptions of 5

U.S.C. § 552(b)(6) and (7)(C) ("Exemption 6" and "Exemption 7(C)"). Specifically, in a July 3,

2017 letter, the SEC relied on Exemptions 6 and 7(C) to withhold records produced by Boruff,

Voyticky, Riordan, and Bennett. *See* SEC FOIA Letter dated July 3, 2017 (attached hereto as

Exhibit J).

      19.    By letter dated September 25, 2017, addressed to the General Counsel of the SEC,

Plaintiff filed an administrative appeal for all the denials set forth above (Requests 17-02840-

FOIA, 17-02842-FOIA, 17-02843-FOIA, 17-02844-FOIA, 17-02845-FOIA, 17-02846-FOIA,

17-02847-FOIA, 17-02848-FOIA, and 17-02849-FOIA). Plaintiff challenged all legal bases

identified by the SEC in their denials, including Exemptions 6, 7(A), and 7(C). *See* Plaintiff's

FOIA Appeal Letter dated September 25, 2017 (attached hereto as Exhibit K).

      20.    By letter dated September 29, 2017, Richard Humes, Associate General Counsel

of the SEC, informed Plaintiff that, while records produced to the SEC before February 1, 2011

were non-exempt and that Plaintiff's request would be remanded so that pre-February 2011

records may be produced, the SEC was affirming the denials for records produced to the SEC

after February 1, 2011 (designated on appeal as Request Number 17-00616-APPS). *See* SEC

FOIA Appeal Denial Letter dated September 29, 2017 (attached hereto as Exhibit L).

21.     Unlike the SEC's initial denials, which identified Exemptions 6, 7(A), and 7(C) as the bases for denying Plaintiff's requests, the SEC now based its decision wholly on Exemption 7(A). In particular, the SEC stated, without giving any explanation, that disclosure of *any* of these records, regardless of whether they were produced by KPMG or others, "could interfere with the Commission's ability to ensure that KPMG completes the agreed-upon undertakings set forth in the [KPMG] Order, and failure to do so by KPMG could result in further investigation by the Commission." This explanation was particularly unpersuasive given that Exemption 7(A) was *not even invoked* in connection with the SEC's July 3, 2017 denials with respect to records produced by Boruff, Voyticky, Riordan, and Bennett, which denials were based *solely* on Exemptions 6 and 7(C), which relate to *privacy*, not law enforcement. *See* Exhibit J (not invoking Exemption 7(A)).

22.     Plaintiff has a right of access to the requested records under 5 U.S.C. §552 (a)(3)(A). The SEC has wrongfully withheld them because none fall within Exemption 7(A) or any other exemption. Exemption 7(A) is not applicable to the withheld documents—which by definition do not include any SEC-generated documents—because, among other things, the SEC's investigation into Miller Energy—which is now bankrupt—has been completed for years, because the SEC's investigation into KPMG and Riordan was completed no later than August 15, 2017, when the SEC accepted a settlement offer from KPMG and Riordan, and because the SEC has publicly described and even quoted content from the withheld documents, all of which means their release, or the release of at least of subset of them, could not reasonably be expected to interfere with law enforcement proceedings.

23.     The SEC advised Plaintiff of Plaintiff's right to judicial review in this court in the letter dated September 29, 2017. *See* Exhibit L.

## CLAIM FOR RELIEF

24.     Plaintiff repeats and realleges paragraphs 1-23.

25.     Plaintiff has exhausted all administrative remedies to process its FOIA requests.

26.     Defendant has wrongfully withheld the requested records from Plaintiff, in violation of 5 U.S.C. § 552. Further, even if any records fall within Exemption 7(A) or any other exemption, Defendant has failed to provide "[a]ny reasonably segregable portion" of those records as required by 5 U.S.C. § 552(b).

27.     Plaintiff is entitled to injunctive and other appropriate relief with respect to the release and disclosure of the requested documents.

## REQUESTED RELIEF

Wherefore, Plaintiff prays that this Court:

A.     order Defendant to disclose the requested records and make copies available to Plaintiff;

B.     alternatively, if any records fall within any exemption, order Defendant to disclose portions of those records as required by 5 U.S.C. § 552(b);

C.     provide for expeditious proceedings in this action;

D.     award Plaintiff its costs and reasonable attorneys' fees incurred in this action under 5 U.S.C. § 552(a)(4)(E); and

E.     grant such other relief as the Court may deem just and proper.

Dated: January 31, 2018                    Respectfully submitted,

*/s/ Times Wang*
**COHEN MILSTEIN SELLERS & TOLL PLLC**
Steven J. Toll (D.C. Bar 225623)
Times Wang (D.C. Bar 974054)
stoll@cohenmilstein.com
twang@cohenmilstein.com
1100 New York Ave. NW, Suite 500

Washington, DC 20005
Tel: (202) 408-4600
Fax: (202) 408-4699

Laura H. Posner
lposner@cohenmilstein.com
88 Pine Street, 14th Floor
New York, NY 10005
Tel: (212) 220-2925
Fax: (212) 838-7745

*Attorneys for Plaintiff*